IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KELVION WALKER,                        §
                                       §
                    Plaintiff,         §
                                       §  Civil Action No. 3:13-CV-4896-D
VS.                                    §
                                       §
AMY WILBURN,                           §
                                       §
                    Defendant.         §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Kelvion Walker ("Walker") against defendant Amy Wilburn

("Officer Wilburn"), a former officer of the Dallas Police Department, seeking relief under

42 U.S.C. § 1983 arising from alleged use of excessive force, Officer Wilburn moves to stay

the case until her criminal trial is concluded.  For the reasons that follow, the court amends

the scheduling order to permit Officer Wilburn to file the motion, and it grants the motion

to stay.

I

In December 2013 Officer Wilburn, acting within the course and scope of her

employment as a Dallas police officer, shot Walker.  Shortly thereafter, Walker filed this

lawsuit, alleging that Officer Wilburn violated his constitutional rights by using excessive

force against him.[1]  Officer Wilburn was later indicted for the offense of aggravated assault

---

[1]Walker also asserted a claim for denial of medical care, but the court dismissed the
claim on Officer Wilburn's motion.

by a public servant, a first degree felony.

In this case, the court entered a scheduling order that set a February 2, 2015 catch-all deadline for filing all "motions not otherwise covered" under the scheduling order. The court later extended the February 2, 2015 deadline to April 2, 2015. The court separately set the trial for a two-week docket beginning on October 5, 2015.

On August 28, 2015 Officer Wilburn sought leave to file a motion to stay the present case until her criminal case is resolved. The court granted the motion, and on September 4, 2015 she filed the instant motion to stay. Walker opposes the motion, contending that Officer Wilburn has not shown good cause for amending the scheduling order to permit her to file the motion to stay, and that Officer Wilburn has not demonstrated that a stay should be granted.

II

Before considering the merits of Officer Wilburn's motion to stay, the court must decide whether to amend the scheduling order, because Officer Wilburn filed her motion for leave, and her motion to stay, after the deadline in the scheduling order for filing a motion not otherwise covered by the order.

A

Fed. R. Civ. P. 16(b)(3)(A) provides that the court's "scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." "The 'good cause' standard focuses on the diligence of the party seeking to modify

- 2 -

the scheduling order." *Cut–Heal Animal Care Prods., Inc. v. Agri–Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.).  Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish "good cause." *Id.*; *Price v. United Guar. Residential Ins. Co.*, 2005 WL 265164, at *4 (N.D. Tex. Feb. 2, 2005) (Fish, C.J.) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).  "Instead, the movant must show that, despite her diligence, she could not reasonably have met the scheduling deadline." *Matamoros v. Cooper Clinic*, 2015 WL 4713201, at *2 (N.D. Tex. Aug. 7, 2015) (Fitzwater, J.) (citing *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003)).

The court assesses four factors when deciding whether to grant a motion for leave to file an untimely motion under Rule 16(b)(4): "(1) the explanation for the failure to timely [file the motion]; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (citation, internal quotation marks, and brackets omitted); *see also M–I L.L.C. v. Stelly*, 2012 WL 1555913, at *1 (S.D. Tex. May 1, 2012).  The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).[2]

---

[2]Officer Wilburn maintains that, by granting her motion for leave to file the motion to stay, the court implicitly found good cause.  The court disagrees.  When it granted Officer Wilburn leave to file the motion to stay, the court did not decide whether the scheduling order should be amended; it simply concluded that she should be able to file the motion so

B

Officer Wilburn does not address the Rule 16(b)(4) good cause standard in her motion for leave or motion to stay, and she only addresses the first factor in her reply. "When a party files an untimely motion . . . and does not address the good cause standard under Rule 16(b)(4), this court typically denies the motion for that reason alone." *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 2671316, at *3 (N.D. Tex. June 30, 2010) (Fitzwater, C.J.) (citing *Serv. Temps*, 2009 WL 3294863, at *1). But the court has made exceptions in cases where the movant did not address the Rule 16(b)(4) good cause standard but the grounds on which the movant relied to establish good cause were relatively clear. *See, e.g., Nieves v. John Bean Techs. Corp.*, 2014 WL 2587577, at *2 (N.D. Tex. June 10, 2014) (Fitzwater, C.J.) ("[The movant] neither identifies the correct standard nor cites Rule 16(b)(4) in her brief, but the grounds on which she relies enable the court to apply the pertinent four-factor test."); *Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *2 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.) ("[The movant] does not brief its motion under the Rule 16(b)(4) good cause standard or related case law, but the grounds on which it relies to establish good cause are relatively clear."). Accordingly, because the grounds on which Officer Wilburn relies are sufficient to enable the court to apply the four-factor test, the court will consider on the present briefing whether she has met the good cause standard of Rule 16(b)(4) to amend the scheduling order and enable her to file her motion to stay.

─────────────────────

that the court could assess whether there is good cause to amend the scheduling order, and, if so, whether a stay should be granted.

C

1

The court considers first Officer Wilburn's explanation for failing to timely file her motion to stay the proceedings.  On April 24, 2014 a state grand jury indicted Officer Wilburn based on the conduct on which Walker relies to establish § 1983 liability.  Officer Wilburn did not file her motion for leave until August 28, 2015, nearly five months after the April 2, 2015 catch-all motion deadline.  She contends that "[she] considered seeking a stay earlier but the case law indicated that a stay would not likely be granted when there was neither a trial setting nor even an estimate of a trial setting in the criminal case."  D. Reply 2.  And she maintains that the attorney who represents her in the criminal case, Robert Rogers, Esquire ("Rogers"), only recently received an estimate from the special prosecutor about when her criminal case may be set for trial.

The court finds that Officer Wilburn's explanation for failing to file a timely motion to stay is not persuasive.  In Rogers' declaration, he avers that "[t]he criminal case is not currently set for trial, and I am waiting for additional discovery from the special prosecutor. My best estimate is that the criminal case will not be tried until April 2016, at the earliest." D. Mot. for Leave, Ex. A ¶ 3.[3]  Rogers neither states that he is basing his estimate on

---

[3]The court is citing the record this way because although Officer Wilburn included Rogers' declaration in an appendix, she did not properly paginate the appendix and instead labeled the declaration as an exhibit.  *See* N.D. Tex. Civ. R. 7.1(i)(4), which provides, in relevant part, that "[e]ach page of the appendix must be numbered legibly in the lower, right-hand corner.  The first page must be numbered as '1,' and succeeding pages must be numbered sequentially through the last page of the entire appendix (i.e., the numbering

information provided by the special prosecutor or another authority nor that he only obtained the estimate after the April 2, 2015 scheduling order deadline had expired. Officer Wilburn does not represent that she made any effort to determine before the April 2, 2015 deadline whether there was an estimated or set trial date in her criminal case. Rather, she makes only a conclusory assertion that "[t]here was no such good faith estimate during the discovery phase of this case." D. Reply 2.

Moreover, Officer Wilburn fails to cite any authorities that her counsel relied on to conclude that courts are reluctant to grant stays in civil cases when the dates for parallel criminal trials have not been estimated or set. In fact, there are decisions of this court that would support a stay in such circumstances. *See, e.g., SEC v. AmeriFirst Funding, Inc.*, 2008 WL 866065, at *3, *5 (N.D. Tex. Mar. 17, 2008) (Fitzwater, C.J.) (granting defendant's motion to stay discovery in civil case where criminal investigations had been initiated but before indictment had been returned); *Librado v. M.S. Carriers, Inc.*, 2002 WL 31495988, at *2 (N.D. Tex. Nov. 5, 2002) (Fitzwater J.) (granting partial stay of discovery in civil case and rejecting plaintiff's argument that stay should not be granted because criminal case was "proceeding slowly and uncertainly, with no specific trial date," because "Texas law recognizes a right to a speedy trial").

Officer Wilburn next posits that it was not until late August 2015 that her civil attorney became aware of Rogers' concerns about her ability to receive a fair and impartial

---

system must not re-start with each succeeding document in the appendix)."

criminal trial and adequately defend herself if the civil trial proceeded first.   But Officer Wilburn does not maintain that Rogers only developed these concerns after the April 2, 2015 deadline had passed.   And an attorney in a civil case who represents a client who has been indicted in a parallel criminal case should reasonably be expected to apprise himself of the progress of the criminal case.   Indeed, it is common practice for defense attorneys to move to stay civil proceedings until parallel criminal proceedings are resolved.   *See Gilmore v. City of Bryan*, 2014 WL 5878734, at *2 (S.D. Tex. Nov. 10, 2014) (citing *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007)) ("[T]he district court may, and *following common practice often does*, stay the civil action until the pending or potential criminal case has been decided.") (emphasis added); *Doe v. City of N.Y.*, 2010 WL 286643, at *1 (S.D.N.Y. Jan. 19, 2010) ("District courts *routinely* . . . stay a case when confronted with the concurrent pendency of civil and criminal proceedings involving the same or related subject matter.") (emphasis added).   Officer Wilburn's civil counsel knew well before the April 2, 2015 motion deadline that she had been indicted in a criminal case arising from the same events as those involved in this case.   This is so at least for the reason that Walker referred to the indictment multiple times in his second amended complaint, which was filed on December 18, 2014.   Officer Wilburn has not offered a persuasive explanation for her failure to follow the common practice, which would have resulted in her filing a motion to stay by the April 2, 2015 deadline.

Finally, Officer Wilburn contends that Walker's amended pretrial disclosures filed on September 4, 2015 reveal that he expects to offer at trial her Internal Affairs Report, which

is inadmissible in her criminal trial, and that "[b]y producing this information at the civil trial, the special prosecutor will have access to information which is not discoverable under criminal law." D. Reply 7.  Officer Wilburn also posits that Rogers recently notified her civil counsel that some discovery generated in this lawsuit had been provided to the special prosecutor, which "could potentially prejudice and compromise the special prosecutor against [her]." D. Mot. for Leave 2.  The fact that the special prosecutor gained or will likely gain information from this case does not sufficiently explain the untimely filing.  It is commonly understood that a prosecutor might (if not will) obtain information from parallel civil litigation that is not discoverable in a criminal case.  Indeed, this is a concern that courts often rely on to stay civil discovery and proceedings until parallel criminal proceedings are resolved.  *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 n.11 (2d Cir. 2012) (quoting *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009)) (stating that one of the "possible justifications for a stay" is "to 'prevent either party from taking advantage of broader civil discovery rights.'"); *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit."); *SEC v. Offill*, 2008 WL 958072, at *4 (N.D. Tex. Apr. 9, 2008) (Fitzwater, C.J.) (quoting *Campbell*, 307 F.2d at 487) (noting that when ruling on a motion for stay, "'a judge should be sensitive to the differences in the rules of discovery in civil and criminal cases.  While the Federal Rules of Civil Procedure have provided a well-stocked battery of

discovery procedures, the rules governing criminal discovery are far more restrictive.'").

Accordingly, the court concludes that Officer Wilburn has failed to provide a persuasive explanation for failing to file her motion to stay the proceedings by the scheduling order deadline.

2

The second factor considers the importance of the amendment. The parties agree that there are two cases—this civil suit and the parallel criminal case—involving the shooting of Walker currently pending against Officer Wilburn. Officer Wilburn maintains that "the substantial overlap of issues between the pending criminal indictment against [her] and this civil case place[s] her in the position of having to choose between the assertion of her Fifth Amendment rights and the ability to adequately defend herself in this lawsuit, which seeks millions of dollars in damages." D. Mot. for Stay 18. The court concludes that the amendment Officer Wilburn seeks regarding the scheduling order is important. "A stay can protect a civil defendant from facing the difficult choice between being prejudiced in the civil litigation, if the defendant asserts . . . her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if . . . she waives that privilege in the civil litigation." *Louis Vuitton Malletier*, 676 F.3d at 97 (citing *United States v. 4003–4005 5th Ave.*, 55 F.3d 78, 83 (2d Cir. 1995)). "A defendant in a civil proceeding who invokes the Fifth Amendment as a result of an overlapping criminal investigation or proceeding 'risk[s] the adverse inference arising from [her] assertion of the privilege.'" *Id.* at 97-98 (some alterations in original) (quoting Alvin Hellerstein & Gary Naftalis, *Private Civil Actions and Concurrent*

*or Subsequent Regulatory or Criminal Proceedings*, SG046 ALI–ABA 903, 951 (2001)).

"The Supreme Court has explained 'that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'" *Id.* at 98 (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)) (citing *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995) (observing that it is permissible for the trier of fact to draw such adverse inferences)). "But if civil defendants do not elect to assert their Fifth Amendment privilege, and instead fully cooperate with discovery, their 'testimony . . . in their defense in the civil action is likely to constitute admissions of criminal conduct in their criminal prosecution.'" *Id.* (quoting *SEC v. Boock*, 2010 WL 2398918, at *2 (S.D.N.Y. June 15, 2010)).

As discussed *infra* at § III(B)(1), Officer Wilburn's Fifth Amendment rights will be burdened if this case is tried prior to her criminal trial. Because the motion to stay involves Officer Wilburn's constitutional rights, and because the court concludes below that she has satisfied the standard for obtaining a stay, the court finds that the requested amendment is important.

3

The court will consider together the third factor—the potential prejudice to Walker in allowing the amendment—and the fourth factor—the availability of a continuance to cure such prejudice. As the court explains below, Walker will not be substantially prejudiced if this case is stayed. *See infra* § III(B)(3). Because the same reasoning applies here, the court concludes that Walker will not be unduly prejudiced by amending the scheduling order so

that Officer Wilburn can file the motion to stay.  The availability of a continuance to cure prejudice is not a relevant factor in the circumstances of this case.

4

The court now assesses the four factors holistically, without mechanically counting the number of factors that favor each side.  *See Serv. Temps*, 2009 WL 3294863, at *3. Although Officer Wilburn has not provided a sufficient explanation for her delay in seeking this relief, the amendment she seeks is important (it implicates her Fifth Amendment rights and affects the fairness of both her criminal and civil trials), she will be significantly prejudiced if she is not permitted to seek a stay, and Walker will not be substantially prejudiced if Officer Wilburn is permitted to file the motion and a stay is granted.  The court therefore holds, based on a holistic assessment of the relevant factors, that Officer Wilburn has satisfied the good cause standard for amending the scheduling order to enable her to file her motion to stay.

III

The court now considers the merits of Officer Wilburn's stay motion.

A

"[A] district court may stay a civil proceeding during the pendency of a parallel criminal proceeding.  Such a stay contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.'"  *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983) (citing *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. Oct. 1981)).  "The stay of a pending matter is ordinarily within the trial court's wide discretion

to control the course of litigation." *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990).

> As the Fifth Circuit has instructed, in ruling on requests for stays of the civil side of parallel civil/criminal proceedings, [j]udicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. In some situations it may be appropriate to stay the civil proceeding. In others it may be preferable for the civil suit to proceed-unstayed.

*United States v. Gieger Transfer Serv., Inc.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997) (quoting

*Campbell*, 307 F.2d at 487) (internal quotation marks omitted).

> Courts from other jurisdictions have outlined several factors that should be considered in determining whether "special circumstances" warrant a stay, including: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

*Heller Healthcare Fin., Inc. v. Boyes*, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002)

(Fitzwater, J.) (citing *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld*

*Mech., Inc.*, 886 F.Supp. 1134, 1139 (S.D.N.Y. 1995) ("*Trs. of Plumbers*")) (citing Milton

Pollack, *Parallel Civil & Criminal Proceedings*, 129 F.R.D. 201, 201-03 (1990) ("*Parallel*

*Proceedings*" )); *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

B

1

The first factor is the extent to which the issues in the parallel criminal case overlap with those in the present case, because self-incrimination is more likely if there is significant overlap. *See Volmar Distribs.*, 152 F.R.D. at 39 (quoting *Parallel Proceedings*, 129 F.R.D. at 203) ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues."). "If there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay." *Trs. of Plumbers*, 886 F.Supp. at 1139 (citing *Parallel Proceedings*, 129 F.R.D. at 203); *see also supra* § II(C)(2) (discussing importance of staying civil case until criminal case is resolved).

Walker asserts that this factor weighs against a stay because the civil case does not present any self-incrimination concerns. He contends that Officer Wilburn waived her Fifth Amendment privilege against self-incrimination by giving her deposition, providing written discovery, and otherwise completing discovery without invoking the privilege.[4] The court

---

[4]Walker's reliance on *Librado*, 2002 WL 31495988, at *2, is misplaced. In *Librado* the court was "not persuaded that all discovery must be halted" because the parallel civil and criminal cases involved different defendants—the employer was sued in the civil case and the employee was indicted in the criminal case. *Id.* Thus the court concluded that there was "a great deal of discovery that both parties could undertake" in the civil case without implicating the employee's Fifth Amendment privilege. *Id.* The court allowed discovery to continue except for deposing the employee, which would risk burdening his Fifth Amendment privilege, or where the employer would be prejudiced by the employee's unavailability. *Id.* Here, unlike in *Librado*, the case cannot proceed without implicating the Fifth Amendment rights of Officer Wilburn, who is the same defendant in both the civil and criminal cases. Discovery has been completed in this case, and the trial is set for the two-week docket of October 5, 2015. Proceeding to trial would place Officer Wilburn in the

disagrees.  Officer Wilburn's participation in pretrial discovery does not in all respects waive her Fifth Amendment privilege for the remainder of the case.  Accordingly, it is possible that Officer Wilburn will be required to testify at her civil trial about matters concerning which she did not waive the privilege and as to which she wishes to assert the privilege to protect her interests in her criminal case.  Therefore, the court holds that Officer Wilburn's participation in discovery does not weigh against granting a stay.

The parties agree that the subject matter of the criminal charges against Officer Wilburn is precisely the subject matter of the instant civil suit.  Both proceedings arise from allegations regarding Officer Wilburn's shooting of Walker.  Walker sues Officer Wilburn based on a claim that she used excessive force, in violation of his Fourth Amendment rights; the grand jury indicted Officer Wilburn based on the same conduct for the offense of aggravated assault by a public servant.  The court therefore concludes that the overlap of

---

position of deciding whether to testify in her civil trial, which would place her Fifth Amendment rights squarely at issue.  *See supra* § II(C)(2) (explaining how conducting trial in civil case before resolving parallel criminal case could unduly burden defendant's Fifth Amendment rights).  Just as the court in *Librado* stayed the criminal defendant's deposition to prevent the risks associated with his testifying, the court in this case should stay the proceedings against Officer Wilburn to prevent the same risks associated with her testifying at trial.

Walker relies on *Multiven, Inc. v. Cisco Systems, Inc.*, 725 F.Supp.2d 887 (N.D. Cal. 2010), for the proposition that any burden on a defendant's Fifth Amendment privilege is negligible where the defendant already has provided deposition testimony on substantive issues in the civil case.  *See id.* at 897-98.  *Multiven* represents the court's balancing of the factors that apply in the Ninth Circuit.  District judges sometimes exercise their discretion differently: that prospect is inherent in the concept of discretionary decisions.  And to the extent that *Multiven* would require that this court reach a different result in this case, the court notes that *Multiven* is not binding on this court.

- 14 -

issues between the civil and criminal actions weighs in favor of a stay.

2

The second factor focuses on the status of the criminal case. "A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct." *Librado*, 2002 WL 31495988, at *2; *see also Trs. of Plumbers*, 886 F.Supp. at 1139. As noted, the parties agree that Officer Wilburn has been indicted based on the same conduct that Walker relies on to recover in this civil suit. Walker asserts that there is no specific date for Officer Wilburn's criminal trial or basis to believe that the trial will take place in the foreseeable future. He posits that cases in Dallas County can be prolonged for several years, particularly when, as here, they involve significant complexity and the defendant is not in custody. The court is not persuaded by this argument because "Texas law recognizes a right to a speedy trial." *Librado*, 2002 WL 31495988, at *2 (rejecting plaintiffs' contention that the fact that "the criminal case against [defendant] is proceeding slowly and uncertainly, with no specific trial date," weighs against a stay because "Texas law recognizes a right to a speedy trial"); *see also Heller Healthcare*, 2002 WL 1558337, at *3 (concluding that "the status of the criminal case weighs in favor of a stay" because "[defendant] is under indictment rather than merely under investigation," without requiring a trial date to be set or estimated); *see also Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1089 (5th Cir. 1979) (holding that district court abused its discretion in denying stay of civil proceedings even though there was not yet a criminal indictment). Because Officer Wilburn has been indicted, the court concludes that the status of the criminal case weighs in favor of a stay.

3

The court also weighs Walker's private interests in proceeding expeditiously against the prejudice that will be caused by the delay that will result from the stay. "Generally a 'civil plaintiff has an interest in the prompt resolution of his claims.'" *SEC v. Mutuals.com, Inc.*, 2004 WL 1629929, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *SEC v. Mersky*, 1994 WL 22305, at *3 (E.D. Pa. Jan. 25, 1994)). But "[n]ormally, in evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim." *Alcala v. Tex. Webb Cnty.*, 625 F.Supp.2d 391, 397 (S.D. Tex. 2009) (internal quotation marks omitted). The present case involves unique circumstances: the parties have completed discovery and prepared for a trial that is set to begin imminently.[5]  Although Officer Wilburn has been indicted, no trial date has been set in her criminal case, and there is no reliable indication of when the criminal trial will begin.[6]  Consequently, Walker has a heightened interest in proceeding with this case. If the court grants the stay, it will exercise its discretion and stay the case for the time needed to protect Officer Wilburn's Fifth Amendment rights. *See Heller Healthcare*, 2002 WL 1558337, at *3 ("[I]ssuance and duration of a stay are

---

[5]The trial is set on the October 5, 2015 two-week civil docket. After the court granted Officer Wilburn leave to file her motion to stay, it stayed the requirement that the parties make pretrial filings related to this trial setting. If the court denied a stay, it would not try the case until these pretrial filings had been made.

[6]The only indication of a trial date comes from Rogers, Officer Wilburn's criminal defense attorney, who avers that "[his] best estimate is that the criminal case will not be tried until April 2016, at the earliest." D Mot. for Leave, Ex. A ¶ 3.

committed to the court's sound discretion."). "The court recognizes that, even if convicted, [Officer Wilburn's] Fifth Amendment privilege may continue throughout the pendency of [her] direct appeal." *Id.* (citing *Frank v. United States,* 347 F.2d 486, 491 (D.C. Cir. 1965)). "[B]ecause imposition of a stay lasting throughout the duration of [Officer Wilburn's] direct appeal (if [she] is convicted) would likely be unduly burdensome to [Walker's] interests as plaintiff, the court contemplates that this stay [would] remain in effect only through sentencing." *Id.* "If [she] is acquitted, the stay [would] terminate upon the return of a not guilty verdict." *Id.*

The court holds that a stay of this duration would not unduly prejudice Walker. Walker posits that "delay denies justice" because "memories fade" and "evidence becomes stale." P. Resp. 11. The court generally agrees with this assertion. "[C]ourts recognize that delay can lead to the loss of evidence and duly frustrate a plaintiff's ability to put on an effective case. With the passage of time, witnesses become unavailable, memories of conversations and dates fade, and documents can be lost or destroyed." *Alcala*, 625 F.Supp.2d at 397 (citing cases); *see also Mutuals.com*, 2004 WL 1629929, at *3 (quoting *Mersky*, 1994 WL 22305, at *3) ("Generally, a 'civil plaintiff has an interest . . . in obtaining discovery while information is still fresh in witnesses' minds.'"). This is not a concern in the present case, however, because the parties already completed discovery, including taking the depositions of Officer Wilburn and all other fact witnesses deemed important by the parties. Walker has therefore obtained and preserved the evidence he needs for trial. *See* Nov. 6, 2014 Order at 2 (setting March 1, 2015 as the deadline to complete discovery).

Walker contends that delaying the trial will also prejudice him by impeding his right to recover from Officer Wilburn. The court recognizes that, absent a settlement between the parties, staying the trial will delay Walker's potential recovery in this lawsuit. But as previously discussed, "courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim." *Alcala*, 625 F.Supp.2d at 397. Although "'[t]he threat of the dissipation of assets during a stay has been recognized as a substantial burden for plaintiffs,'" *Whitney National Bank v. Air Ambulance by B&C Flight Management, Inc.*, 2007 WL 1468417, at *3 (S.D. Tex. May 18, 2007) (quoting *State Farm Mutual Automobile Insurance Co. v. Beckham-Easley*, 2002 WL 31111766, at *3 (E.D. Pa. 2002)), Walker does not oppose a stay on this basis. In addition to all reasonable and necessary costs and attorney's fees, Walker seeks approximately $8.5 million in actual damages and between $2 million and $17 million in exemplary damages. Walker does not assert that Officer Wilburn has personal wealth that might diminish before the case is tried.

Walker also maintains that his high probability of recovery weighs against a stay, but he cites no cases, and the court has found none, stating that the court can or should consider a plaintiff's likelihood of success when determining whether to grant a stay. Consequently, the court concludes that any prejudice that will accrue to Walker as a result of delaying his civil suit until conclusion of Officer Wilburn's criminal trial will be minimal and does not weigh heavily against granting a stay. *See Heller Healthcare*, 2002 WL 1558337, at *3.

4

The court next considers Officer Wilburn's private interest in securing a stay and the

burden she would incur were a stay denied.  As discussed above, "absent a stay, [Officer Wilburn] faces a conflict between asserting [her] Fifth Amendment rights and fulfilling [her] legal obligations as a witness in this civil action." *Librado*, 2002 WL 31495988, at *3. "This conflict may be largely, if not completely, eliminated by granting a stay." *Id.* Additionally, Officer Wilburn has an interest in staying the civil trial to avoid exposing her criminal defense strategy to the prosecution. *See Louis Vuitton Malletier*, 676 F.3d at 97 n.11 (quoting *Creative Consumer Concepts*, 563 F.3d at 1080) (noting that one of the "possible justifications for a stay" is "to 'prevent the exposure of the criminal defense strategy to the prosecution'"); *Alcala*, 625 F.Supp.2d at 397 (holding that "a stay may be justified in order to prevent . . . exposing the defense's theory to the prosecution in advance of trial, or otherwise prejudicing the criminal case").  The court concludes that Officer Wilburn's private interest weighs in favor of a stay.[7]

5

The court's interest does not favor either party.  On the one hand, "the courts have a strong interest in moving matters expeditiously through the judicial system." *SEC v. Kiselak Capital Grp., LLC*, 2011 WL 4398443, at *4 (N.D. Tex. Sept. 20, 2011) (Fitzwater, C.J.). On the other hand, granting a stay "serves the interests of the courts, because conducting the criminal proceedings first advances judicial economy." *Offill*, 2008 WL 958072, at *3

---

[7]Because the court reaches this conclusion based on consideration of Officer Wilburn's Fifth Amendment rights, it need not address her contention that media coverage of other lawsuits involving use of force by police officers, as well as the media attention and public comments in this case, support a stay.

(citing *Parallel Proceedings*, 129 F.R.D. at 204).  "Resolution of the criminal case may

increase prospects for settlement of the civil case.  Due to differences in the standards of

proof between civil and criminal prosecutions, the possibility always exists for a collateral

estoppel or res judicata effect on some or all of the overlapping issues."  *Parallel

Proceedings*, 129 F.R.D. at 204.  And "granting a stay will not unduly interfere with the

court's management of its docket."  *Heller Healthcare*, 2002 WL 1558337, at *3.  The court

holds that its interests do not weigh for or against a stay.

6

"The public has an interest in the just and constitutional resolution of disputes with

minimal delay."  *Kiselak Capital Grp.*, 2011 WL 4398443, at *4; *see also Alcala*, 625

F.Supp.2d at 407 ("The public has an interest in the resolution of disputes with minimal

delay, but only to the extent that the integrity of the defendant's rights can be maintained.").

Granting a stay will delay the proceedings, but it will also protect Officer Wilburn's Fifth

Amendment rights in her parallel criminal case.  "The degree of overlap is an important

consideration in weighing the public's interests."  *Alcala*, 625 F.Supp.2d at 407.  As already

discussed, there is significant overlap between the present case and the parallel criminal case.

And "[t]he Fifth Circuit has long recognized the public interest in law enforcement."

*Mutuals.com*, 2004 WL 1629929, at *4 (citing *Campbell*, 307 F.2d at 487).

> The very fact that there is clear distinction between civil and
> criminal actions requires a government policy determination of
> priority: which case should be tried first.  Administrative policy
> gives priority to the public interest in law enforcement.  This
> seems so necessary and wise that a trial judge should give

> substantial weight to it in balancing the policy against the right
> of a civil litigant to a reasonably prompt determination of his
> civil claims or liabilities.

*Campbell*, 307 F.2d at 487.  The public also "has an interest in ensuring the criminal discovery process is not subverted." *Mutuals.com*, 2004 WL 1629929, at *4 (quoting *Morris v. Am. Fed'n of State, Cnty. & Mun. Employees*, 2001 WL 123886, at *2 (S.D.N.Y. Feb. 9, 2001)); *see also supra* § II(C)(1) (explaining that courts often stay civil proceedings in order to prevent parties in parallel criminal proceedings from taking advantage of the broader discovery rights afforded in civil litigation).  This is less of a concern in the present case because discovery has been conducted, but the risk has not been fully eliminated because the action is still pending and the trial has not yet been held.  The court therefore concludes that the interests of the public weigh in favor of a stay.

7

Having considered the foregoing factors, and in the interests of justice, the court grants Officer Wilburn's motion to stay the present case until her parallel criminal case is resolved, either by dismissal, plea, a verdict of not guilty, or a guilty verdict and sentencing.

\* \* \*

For the reasons explained, the court amends the scheduling order to permit Officer Wilburn to file her motion to stay, and it grants the motion to stay.  The court stays this case until Officer Wilburn's parallel criminal case is concluded by dismissal, plea, a verdict of not

guilty, or a guilty verdict and sentencing.

**SO ORDERED**.

October 5, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE