IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KELVION WALKER,                          §
                                         §
                    Plaintiff,           §
                                         §   Civil Action No. 3:13-CV-4896-D
VS.                                      §
                                         §
AMY WILBURN,                             §
                                         §
                    Defendant.           §

MEMORANDUM OPINION
AND ORDER

      Plaintiff Kelvion Walker ("Walker") moves for partial summary judgment on the issue of defendant Amy Wilburn's ("Officer Wilburn's") liability for violating his constitutional rights through her alleged use of excessive force. His motion presents the principal questions whether Officer Wilburn, by pleading guilty to the state-law offense of recklessly discharging a firearm in a municipality having a population of 100,000 or more, is foreclosed from denying that she used excessive force when she shot Walker, and whether she is precluded from asserting the defense of qualified immunity. Because Officer Wilburn's guilty plea does not establish her civil liability or defeat qualified immunity, the court concludes that Walker has failed to carry his summary judgment burden and denies his motion.

I

      In December 2013 Officer Wilburn, acting within the course and scope of her

employment as a Dallas police officer, shot Walker.[1]  Shortly thereafter, Walker filed this

lawsuit under 42 U.S.C. § 1983, alleging that Officer Wilburn violated his constitutional

rights by using excessive force.  A Dallas County grand jury later indicted Officer Wilburn

for the crime of aggravated assault by a public servant.  On Officer Wilburn's motion, the

court stayed this case "until Officer Wilburn's parallel criminal case [was] concluded by

dismissal, plea, a verdict of not guilty, or a guilty verdict and sentencing."  *See Walker v.*

*Wilburn* (*Walker I*), 2015 WL 5873392, at *9 (N.D. Tex. Oct. 5, 2015) (Fitzwater, J.).  The

court later lifted the stay.

Officer Wilburn ultimately entered a guilty plea in the parallel criminal proceeding,

but not to the charge of aggravated assault; she pleaded guilty instead to the offense of

recklessly discharging a firearm in a municipality having a population of 100,000 or more,

a Class A misdemeanor.  *See* Tex. Penal Code Ann. § 42.12 (West 2016).  Officer Wilburn

admitted committing this crime "by discharging [her] firearm at Kelvion Walker, a person

sitting as a passenger in a motor vehicle."  P. App. 50.  The Texas district court found that

the evidence presented was sufficient to substantiate Officer Wilburn's guilt, but the court

did not enter a judgment.  Instead, under the Texas deferred adjudication scheme,

adjudication of Officer Wilburn's guilt was deferred, and she was placed on community

---

[1]In deciding Walker's motion for partial summary judgment, the court views the evidence in the light most favorable to Officer Wilburn as the summary judgment nonmovant and draws all reasonable inferences in her favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

supervision for a period of 18 months.

Walker now moves for partial summary judgment, contending that Officer Wilburn's admission of guilt in the parallel criminal case is conclusive as to the issue of liability in this civil case. Officer Wilburn opposes the motion and makes several evidentiary objections.

II

Because Walker will have the burden of proof at trial, to be entitled to summary judgment on his excessive force claim he "must establish 'beyond peradventure all of the essential elements of the claim.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that Walker must demonstrate that there are no genuine and material fact disputes and that he is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

A

Officer Wilburn maintains in her evidentiary objections and in her response brief that the court should not consider the evidence related to her guilty plea—plaintiff's exhibits "F" through "O" (collectively, the "Plea Documents")—for reasons of both admissibility and

public policy.  Walker responds that the evidence related to Officer Wilburn's guilty plea is admissible and is properly considered.[2]

B

Officer Wilburn's first objection is grounded in Fed. R. Evid. 403, which permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Officer Wilburn maintains that the Plea Documents are misleading and unfairly prejudicial because no judgment of guilt has been entered against her, and no such judgment will ever be entered if she successfully completes her term of community supervision.

Texas law provides that, "[u]nder the deferred adjudication scheme, a judge does not make a 'finding of guilt.'"  *Donovan v. State*, 68 S.W.3d 633, 636 (Tex. Crim. App. 2002) (en banc).  Instead, "the judge makes a finding that the evidence 'substantiates the defendant's guilt' and then defers the adjudication."  *Id.*  If the defendant fails to comply with the terms of her community supervision, "the court may then proceed to adjudicate guilt and assess a punishment" on the basis of the defendant's plea.  *See United States v. Mills*, 843

---

[2]The court need not address Officer Wilburn's other objections, which relate to evidence that is not pertinent to the issues here.  Walker sought leave to file the instant motion for partial summary judgment after the deadline for filing dispositive motions so that he could establish that Officer Wilburn's guilty plea is dispositive on the question of liability. His motion for partial summary judgment is based entirely on this ground.  Officer Wilburn's objections to all evidence not related to her plea—i.e., all evidence besides plaintiff's exhibits "F" through "O"—need not therefore be addressed in this memorandum opinion and order.

F.3d 210, 214 (5th Cir. 2016).  This court therefore concludes that a guilty plea made in the context of a Texas deferred adjudication has some probative value, even though the plea does not necessarily result in a conviction.  Under the deferred adjudication scheme, the defendant admits, and the court finds, that the evidence against the defendant is sufficient to substantiate her guilt.  It is not misleading or unfairly prejudicial to introduce this plea in the instant civil case for the purpose of proving that Officer Wilburn made this admission and that the state court made this finding.  As the court explains below when addressing Officer Wilburn's related Rule 403 objection, *see infra* § III(D), this evidence has probative value.  To the extent there are concerns about unfair prejudice or misleading the jury because Officer Wilburn has not been finally convicted of a crime, the court can adequately address them through appropriate jury instructions.  The court therefore overrules Officer Wilburn's first objection.

C

Officer Wilburn's second objection to the Plea Documents is premised on Fed. R. Evid. 410.[3]  She contends that a plea resulting in deferred adjudication qualifies as a "guilty plea that was later withdrawn."  Rule 410.  Officer Wilburn maintains that, because a judge is authorized under some circumstances to dismiss the case against her before the entire period of community supervision has elapsed, her guilty plea should be treated as if it had

---

[3]Rule 410 provides, in pertinent part, that "[i]n a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions: . . . a guilty plea that was later withdrawn."

already been withdrawn.  The court disagrees.

This argument in effect rests on two unsubstantiated assumptions: first, that when a case is dismissed after a guilty plea has been entered, the plea has been "withdrawn"; and, second, that when it is possible that a criminal case *will be* dismissed in *the future*, it is *presently* true that the plea "*was* later withdrawn."  *Id.* (emphasis added).  Officer Wilburn's first assumption is contrary to the common understanding of a withdrawn plea, which is that it is the defendant herself who must withdraw it.  *See In re Enron Sec., Derivative & ERISA Litig.*, 762 F.Supp.2d 942, 962 (S.D. Tex. 2010) ("Moreover, Federal Rule of Evidence 410 generally mandates that where a defendant who entered a plea of guilty is later permitted to withdraw it under Federal Rule of Criminal Procedure 32(d), evidence of that plea is not admissible in any criminal or civil proceeding against the defendant who made it.").  The second assumption is foreclosed by the plain text of Rule 410, which is clearly phrased in the past tense and therefore is not triggered by the future possibility that a plea may be withdrawn.  The record does not indicate that Officer Wilburn has already withdrawn her guilty plea, or that the criminal case against her has already been dismissed.  Rule 410 is therefore inapposite, and Officer Wilburn's second objection is overruled.

D

In her third objection, Officer Wilburn again relies on Rule 403.  She asserts that, because the elements of recklessly discharging a firearm within a municipality are materially different from the elements of an excessive force claim, permitting Walker to introduce the Plea Documents will confuse the issues in this case.

The court agrees that proof of Officer Wilburn's criminal offense does not establish beyond peradventure that she used excessive force. *See infra* § IV. Nonetheless, her plea has probative value for deciding whether she did use excessive force. Officer Wilburn asserts that she "fired one round at [Walker] to protect [her] life." D. Resp. App. 709. In other words, she maintains that she meant to shoot at Walker, and *intended* to hit him, to protect herself from the danger he presented to her life. There is tension between this version of events—i.e., that she *intended* to shoot Walker—and Officer Wilburn's admission to the offense of *recklessly* discharging a firearm, in violation of § 42.12, which the jury should be permitted to consider

Under Texas law, a person is reckless with respect to a result of her conduct if she "consciously disregards a substantial and unjustifiable risk" that the result will occur, where the nature of the risk is such that disregarding it "constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." Tex. Penal Code Ann. § 6.03(c) (West 2011). The Court of Criminal Appeals of Texas has provided some examples of actions that might violate § 42.12, such as shooting a firearm into the air in a residential district, or shooting at cans in the backyard. *See State v. Rodriguez*, 339 S.W.3d 680, 683-84 (Tex. Crim. App. 2011). Each example in *Rodriguez* involves an intentional use of a firearm that presents an unreasonably high *risk* of harm. *See id.* This is in line with the statutory definition of recklessness. In contrast, Officer Wilburn maintains she *intended* to shoot Walker to protect her own life, not that she discharged her weapon in conscious disregard of a substantial and

unjustifiable risk that the bullet would hit him. This tension between the conduct to which Officer Wilburn pleaded guilty and her assertion that she intentionally shot Walker to protect her own life could prompt the jury to question her credibility on a relevant fact issue: Did she intend to hit Walker when she fired her weapon, to protect her own life, or did she act recklessly? The Plea Documents are therefore relevant. *See* Rule 401(b); *Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 733 (5th Cir. 2011). And although the Plea Documents pose some risk of unfair prejudice, confusing the issues, and/or misleading the jury, that risk does not *substantially* outweigh the probative value of the evidence, and any such risk can be adequately addressed by appropriate jury instructions.

Nor should the court exclude the Plea Documents on the basis that, because under Texas law an element requiring a *mens rea* of recklessness can be satisfied by intentional conduct, Officer Wilburn's factual theory is actually in sync with the elements of the § 42.12 offense. *See* Tex. Penal Code Ann. § 6.02(e) (West 2011). Officer Wilburn admitted that she "committed the offense . . . exactly as alleged/included in the charging instrument." P. App. 63. The charging instrument, in turn, alleges that Officer Wilburn "*recklessly* discharge[d] a firearm inside the corporate limits of a municipality having a population of 100,000 or more." P. App. 50 (emphasis added). It does not allege that she *intentionally* caused harm. Moreover, to apply § 6.02(e) to § 42.12 would lead to the conclusion that *any* intentionally harmful use of a firearm violates the latter statute. But the Court of Criminal Appeals of Texas has suggested that a deliberate, defensive use of a firearm does not constitute an offense under § 42.12 if, under the circumstances, the use is not reckless. *See*

*Rodriguez*, 339 S.W.3d at 682. So it seems that recklessness is an indispensable prerequisite to a violation of § 42.12. *See id.* ("It is only when the defendant is reckless in the manner or circumstances under which [she] pull[s] the trigger . . . that [she] is criminally liable." (second alteration in original) (internal quotation marks omitted)). Thus by pleading guilty in state court to the § 42.12 offense, Officer Wilburn admitted acting recklessly, not intentionally.

Nor can it be argued that some other, undisclosed circumstance surrounding the shooting—besides the fact that Officer Wilburn was shooting at Walker—was what made it reckless. Under Texas law, a valid charging instrument that alleges reckless conduct must specify the facts or circumstances that make the conduct reckless. *See id.* at 683-85. The only fact or circumstance alleged against Officer Wilburn in the criminal charging instrument is that she fired her weapon "at Kelvion Walker, a person sitting as a passenger in a motor vehicle." P. App. 50. For purposes of establishing her guilt in her criminal case, it is this fact that must have made the shooting reckless.

The court therefore overrules Officer Wilburn's third objection.

E

Officer Wilburn's fourth objection is to the original felony indictment against her, which has since been dismissed. She objects on the basis of Fed. R. Evid. 401, 403, 801, 802, and 805. The court sustains Officer Wilburn's objection under Rule 403.

It is axiomatic that a person who is merely charged with a criminal offense is innocent until proved guilty. An unproved accusation has minimal probative value, and poses a great

risk of unfair prejudice.  Accordingly, courts in this circuit have excluded indictments from evidence based on Rule 403.  *See, e.g., In re M&M Wireline & Offshore Servs., LLC*, 2017 WL 485985, at *9 (E.D. La. Feb. 6, 2017); *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, 2016 WL 9412702, at *3 (E.D. La. May 6, 2016); *Isbell v. DM Records, Inc.*, 2012 WL 13005933, at *2 (E.D. Tex. Feb. 3, 2012).  Courts in other circuits have done so as well.  *See, e.g., McGhee v. Joutras*, 1996 WL 706919, at *5 (N.D. Ill. Dec. 5, 1996) (asking, in sustaining Rule 403 objection to indictment, "whatever happened to the principle that an indictment is only a charge that itself proves nothing?"); *Baxter Health Care Corp. v. Spectramed, Inc.*, 1992 WL 340763, at *3 (C.D. Cal. Aug. 27, 1992).  Such logic is even more compelling here, where the indictment is not just unproved, it has already been dismissed.  Officer Wilburn's objection to the indictment (plaintiff's exhibit F) is sustained.[4]

F

In addition to her objections grounded in the Federal Rules of Evidence, Officer Wilburn offers a policy-based argument for excluding the Plea Documents.  She maintains that relying on the Plea Documents to establish her liability would undermine the purpose of deferred adjudication by imposing additional punishment that the legislature did not intend, creating a permanent record of what is supposed to be temporary, and thwarting state-

---

[4]Officer Wilburn also makes a fifth objection, which functions as an argument in the alternative: if the Plea Documents are admitted, they should not be conclusive as to any issue because Officer Wilburn is entitled to the opportunity to explain them.  Because the court is denying Walker's motion for partial summary judgment on the merits, it need not consider this objection.

law procedures that allow for a deferred adjudication case to be dismissed early. Officer Wilburn's argument is inconsistent with state and federal precedent, however, which already impose collateral consequences for deferred adjudications.

The Fifth Circuit has consistently treated orders of deferred adjudication as prior convictions for the purposes of the U.S. Sentencing Guidelines. *See Mills*, 843 F.3d at 214 & n.2 (collecting cases). Texas similarly permits deferred adjudications "to be used for purposes of enhancing punishment for repeat and habitual offenders." *See Nolan v. State*, 102 S.W.3d 231, 239 (Tex. App. 2003, pet. ref'd). Deferred adjudication orders can also have immigration and naturalization consequences. *See Moosa v. INS*, 171 F.3d 994, 1005-06 (5th Cir. 1999). And such orders are sufficiently final to preclude collateral attacks made by defendants via § 1983. *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 655-56 (5th Cir. 2007). Officer Wilburn has therefore failed to establish that, as a matter of public policy, the court should not consider the deferred adjudication order.

IV

The court now turns to the merits of Walker's motion for partial summary judgment. Walker relies on three theories to establish that Officer Wilburn's guilty plea resolves the issue of liability in this case: judicial estoppel, collateral estoppel, and judicial admission.[5]

---

[5]Walker also argues for the first time in his reply brief that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Officer Wilburn from defending herself in the present action because doing so might impugn the validity of her sentence. "[T]his court has long declined to consider arguments raised for the first time in a reply brief," because the nonmovant has no fair opportunity to respond to them. *Martin v. Local 556, Transp. Workers Union of Am., AFL-CIO*, 2016 WL 2983726, at *1 (N.D. Tex. May 23, 2016) (Fitzwater, J.).

The court addresses first Walker's reliance on judicial estoppel.

A

Walker contends that, because in Officer Wilburn's criminal case she has admitted recklessly shooting him, she is judicially estopped from denying liability in this civil case. He maintains that because Officer Wilburn admitted acting recklessly—that is, to grossly deviating from the objectively reasonable standard of care—she cannot now deny that she used excessive force—defined as objectively unreasonable force. Officer Wilburn responds that her position in this case is not plainly inconsistent with her guilty plea because her admission to reckless conduct does not establish her liability or overcome qualified immunity.

B

"[J]udicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011) (en banc). "The purpose of the doctrine is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Wakefield*, 293 B.R. 372, 378 (N.D. Tex. 2003) (Fitzwater, J.) (alterations and internal quotation marks omitted) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). Judicial estoppel applies when (1) the position of the party to be estopped is plainly inconsistent with her previous position, (2) a court accepted the previous position, and (3) the party did not act inadvertently. *Reed*, 650 F.3d at 574. "Because the doctrine is intended to protect the

- 12 -

judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Coastal Plains*, 179 F.3d at 205 (emphasis removed). The three elements specified in *Reed* are not "inflexible prerequisites" or part of "an exhaustive formula," and "different considerations 'may inform the doctrine's application in specific factual contexts.'" *Reed*, 650 F.3d at 574 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (some internal quotation marks omitted)).

C

Officer Wilburn's position that she did not use excessive force, or that she is entitled to qualified immunity, is not plainly inconsistent with her prior position that she acted recklessly. This is so because resolving the questions whether Officer Wilburn is liable for using excessive force or is entitled to qualified immunity requires the jury to consider a variety of other factors, even where it is undisputed that the officer acted recklessly.[6]

To establish that an officer's use of force constituted an unreasonable seizure under the Fourth Amendment, the plaintiff must show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)

---

[6]In theory, Officer Wilburn's admission that she acted recklessly could actually cut both ways. On the one hand, this admission might prompt the jury to doubt her version of events that she acted intentionally to protect her own life. On the other hand, excessive force requires intentional, not merely reckless, conduct. *See infra* § IV(C). But Officer Wilburn's defense in this case does not rest on the premise that she acted recklessly, not intentionally—e.g., that although she intentionally discharged her weapon, the bullet struck Walker as a result of her recklessness.

(quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Id.* (citing *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). "Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred," without the benefit of hindsight. *Cty. of L.A. v. Mendez*, ___ U.S. ___, 137 S. Ct. 1539, 1546-47 (2017) (alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). The reasonableness of an officer's use of force is a purely objective analysis, conducted without regard for the officer's actual state of mind. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2476-77 (2015). Even where, as here, the defendant police officer has taken the position in another case that she acted recklessly, the jury must consider several factors to decide whether the force used was constitutionally excessive. These include the so-called *Graham* factors: "[1] the severity of the crime at issue, [2] whether [Walker] pose[d] an immediate threat to the safety of the officers or others, and [3] whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Poole v. City of Shreveport*, 691 F.3d 624, 627-28 (5th Cir. 2012) (first, second, and fifth alterations in original) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The jury may also consider whether Walker failed to comply with instructions, and the severity of Walker's injuries. *See DeVille v. Marcantel*, 567 F.3d 156, 167-68 (5th Cir. 2009). Because these factors remain to be considered, Officer Wilburn's admission that she acted recklessly does not establish beyond peradventure that Walker is entitled to partial summary judgment on liability.

It is possible, of course, that Officer Wilburn's admission that she acted recklessly could persuade the jury to doubt her version of the events.  Tex. Penal Code Ann. § 42.12 makes it a crime for a person to "recklessly discharge[] a firearm inside the corporate limits of a municipality having a population of 100,000 or more."  Under Tex. Penal Code Ann. § 6.03(c),

> [a] person acts recklessly, or is reckless, with respect to circumstances surrounding [her] conduct or the result of [her] conduct when [she] is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.  The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

A person might act recklessly for the purposes of § 42.12, for example, by "shooting into the ground in a crowd of people," "shooting a gun in the air in a residential district," "shooting at beer bottles in [her] backyard in a residential district," "shooting a gun on the grounds of an elementary school," "shooting at a Stop sign in a business district," or "shooting into the bushes at a city park."  *Rodriguez*, 339 S.W.3d at 683-84 (footnotes omitted).  The defendant's actions must entail "a known and unjustifiable risk of harm or injury to others, risks that the ordinary person in the defendant's shoes probably would not take."  *Id.* at 684.  Armed with a proper understanding of this concept of recklessness, and considering Officer Wilburn's guilty plea to having acted recklessly, the jury may doubt Officer Wilburn's assertion that she acted intentionally to protect her own life.  But the potential for the jury to make this finding does not of itself establish beyond peradventure that Officer Wilburn used

excessive force and that Walker is entitled to partial summary judgment on the question of liability.

Moreover, even if the court assumes that Officer Wilburn's prior position that she acted recklessly forecloses her from asserting that she acted intentionally, an excessive force claim requires intentional conduct. "The Supreme Court and [the Fifth Circuit] have long held that Fourth Amendment violations occur only through intentional conduct." *Watson v. Bryant*, 532 Fed. Appx. 453, 457 (5th Cir. 2013) (per curiam). To prove a Fourth Amendment seizure, a plaintiff must establish a "governmental termination of freedom of movement *through means intentionally applied*." *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989).

Nor is Officer Wilburn's position that she is entitled to qualified immunity plainly inconsistent with her prior position that she acted recklessly. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)) (some

internal quotation marks omitted).

Officer Wilburn is entitled to qualified immunity unless she violated Walker's "clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (1982)). In the excessive force context, "[a] clearly established right is one that is 'sufficiently clear that *every* reasonable official would have understood that what [she] is doing violates that right.'" *Id.* (emphasis added) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). It must have been plain under the governing law that, in the *specific circumstances* the officer faced, her use of force violated the Fourth Amendment. *See id.* at 308-09. Although the jury has not yet heard the evidence, it is conceivable that a reasonable jury could find from the proof offered at trial that a reckless use of force in the circumstances Officer Wilburn faced did not violate Walker's clearly established constitutional rights.[7] Accordingly, Officer Wilburn's admission to criminally reckless conduct is not plainly inconsistent with her position that she is entitled to qualified immunity.

D

Walker raises an additional argument in support of his judicial estoppel claim. He contends that Officer Wilburn has already admitted that the outcome of the parallel criminal case controls the outcome of this case, on the basis of the motion to stay that Officer Wilburn

---

[7]The jury could also make the opposite finding: that a reckless use of force in these circumstances *did* violate Walker's clearly established constitutional rights. But this is a matter to be resolved at trial, not at the summary judgment stage.

previously filed.  In deciding that motion, the court observed that "[t]he parties agree that the subject matter of the criminal charges against Officer Wilburn is precisely the subject matter of the instant civil suit."  *Walker I*, 2015 WL 5873392, at *7.  "Both proceedings," the court explained, "arise from allegations regarding Officer Wilburn's shooting of Walker."  *Id.*  In other words, the same underlying conduct was at issue in both cases.  *See id.*  It was therefore possible that Officer Wilburn could be called upon to testify at her civil trial to facts that could incriminate her in a later criminal trial, placing Officer Wilburn's Fifth Amendment privilege against self-incrimination in jeopardy.  *See id.* at *6-7.

But while the facts of the two parallel cases are indeed identical, the legal issues are not exactly the same—as the court implicitly recognized at the time it decided *Walker I*.[8] Had Officer Wilburn admitted to facts in the parallel proceeding that were sufficient to conclusively establish her liability for using excessive force, the result here would be different.  *Cf. Thore v. Howe*, 466 F.3d 173, 185-87 (1st Cir. 2006) (applying judicial estoppel to prevent plaintiff from denying specific facts, to which he admitted during plea colloquy, that plainly defeated excessive force claim).  The facts that Officer Wilburn did admit, however, do not entitle Walker to partial summary judgment on liability.

---

[8]"Walker sues Officer Wilburn based on a claim that she *used excessive force*, in violation of his Fourth Amendment rights; the grand jury indicted Officer Wilburn based on the same *conduct* for the offense of *aggravated assault by a public servant*."  *See Walker I*, 2015 WL 5873392, at *7 (emphasis added).

V

The court now turns to the question of collateral estoppel.

A

"Collateral estoppel, or issue preclusion, . . . precludes the relitigation of identical issues of facts or law that were actually litigated and essential to the judgment in a prior suit." *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985) (emphasis omitted).  Walker maintains that Officer Wilburn is collaterally estopped from denying liability because an identical issue—the criminality of her conduct—was fully and fairly litigated against her in a previous case.  Officer Wilburn responds that the issue litigated in her criminal case is different from the question of her liability here, and was not essential to the judgment in her criminal case because no judgment of guilt has been entered against her.

B

The court must decide as a threshold question whether federal or state law controls.  Both parties appear to rely on the test that controls when determining whether an issue decided in a prior *federal* case has a preclusive effect in a later case.[9]  But "[a] federal court

---

[9]Under federal law, the elements of collateral estoppel are "(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action." *Davillier v. Sw. Sec., FSB*, 2012 WL 6049014, at *3 (N.D. Tex. Dec. 5, 2012) (Fitzwater, C.J.) (quoting *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995), *overruled on other grounds as recognized by In re Ritz*, 832 F.3d 560, 565 n.3 (5th Cir. 2016)).  Although this test is similar to the Texas standard, a different body of law—federal common law—governs its

must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Sims v. City of Madisonville*, 894 F.3d 632, 644 (5th Cir. 2018) (per curiam) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Therefore, the preclusive effect of a Texas criminal court order is governed by Texas law. *See State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 377 (5th Cir. 1997).

In Texas, the party asserting estoppel must establish that "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *See id.* at 377 (quoting *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994)). The third element only requires that the party against whom estoppel is asserted was a party to the prior case. *Id.* It is also important to note that Texas courts limit the application of issue preclusion to "the precise issue in question" that was litigated in the prior action. *See* 9 William V. Dorsaneo III, *Texas Litigation Guide* § 135.03 (2018) (citing *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991)).

## C

Officer Wilburn raises the question whether an order of deferred adjudication can have any preclusive effect at all. She contends that her guilty plea cannot be characterized as "essential to the judgment" in the criminal case, *see Van Dyke*, 697 S.W.2d at 384, given

---

application.

that no final judgment of guilt has actually been entered against her, *see Donovan*, 68 S.W.3d at 636. The court has found no Texas case that directly answers this question, and must therefore make an "*Erie*-guess" about how the Supreme Court of Texas would decide the question. *See State Farm*, 118 F.3d at 377. The existing case law provides some helpful guidance.

In Texas, "the judgment requirement for collateral estoppel does not always require a final, appealable judgment." *Van Dyke*, 697 S.W.2d at 385. The prior court's decision on the question at issue merely has to be "procedurally definite." *See id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. (g) (1982)). The factors to be considered are whether the parties were fully heard, whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal. *See id.* Although Officer Wilburn raises her finality concerns in the context of the second prong of the collateral estoppel test, the analysis appears to be more accurately categorized under the "full and fair litigation" prong—the finality of a prior order indicates that it was "adequately deliberated and firm." *See State Farm*, 118 F.3d at 381-82 (applying factors relevant to finality to determine whether issue was fully and fairly litigated); *see also* 9 William V. Dorsaneo III, *Texas Litigation Guide* § 135.03 (2018) (categorizing questions of finality under first prong).

The Fifth Circuit's opinion in *State Farm*, which held that a Texas guilty plea constitutes a full and fair litigation of a defendant's guilt, is informative in the present

context.  *See State Farm*, 118 F.3d at 377-84.[10]  A guilty plea resulting in a deferred adjudication is procedurally very similar to an ordinary guilty plea.  In both instances, the trial judge must give the defendant certain admonishments about the consequences of her plea, although the exact admonitions given are different.  *Compare* Tex. Code Crim. Proc. Ann. art. 42A.101(b) (West 2018), *with* Tex. Code Crim. Proc. Ann. art. 26.13(a) (West 2009 & Supp. 2018).  Both contexts also require the judge to find that the defendant's guilt is substantiated by the evidence.  *Compare* Tex. Code Crim. Proc. Ann. art. 42A.101(a), *with* Tex. Code Crim. Proc. Ann. art. 1.15 (West 2005).  And an order of deferred adjudication, like a conviction, is subject to direct appeal unless the defendant waives this right.  *See Dillehey v. State*, 815 S.W.2d 623, 626 (Tex. Crim. App. 1991) (en banc).

Here, Officer Wilburn's guilt was fully and fairly litigated through to a sufficiently final judgment.  Both the state and Officer Wilburn appeared in court at a live hearing to litigate the matter, and both were fully heard: the state offered the signed plea agreement into evidence, and the defendant entered her guilty plea.  *Cf. State Farm*, 118 F.3d at 382 ("The judge gave [defendant] a full hearing; indeed, he did just what [defendant] asked him to do, which was accept his guilty plea.").  Under *State Farm*, no reasoned opinion is required in this context.  *See id.* (noting that where defendant entered plea of guilty, there "was no need for a reasoned opinion" on matter of his guilt).  The court therefore need not decide whether

---

[10]The Texas courts have since adopted *State Farm*'s holding.  *See, e.g., R.F. v. Tex. Dep't of Family & Protective Servs.*, 390 S.W.3d 63, 71 (Tex. App. 2012, no pet.); *Johnston v. Am. Med. Int'l*, 36 S.W.3d 572, 576 (Tex. App. 2000, pet. denied).

the deferred adjudication order itself, which appears to be a pre-printed form, qualifies as such an opinion.[11]  As for reviewability, Officer Wilburn had a right to a direct appeal—although she chose to waive that right.  Moreover, she did not waive her right to habeas review.  Her deferred adjudication order was reviewable via a petition for a writ of habeas corpus from a state court, *see Donovan*, 68 S.W.3d at 638, and via a petition for a writ of habeas corpus from a federal court, *see Thompson v. Quarterman*, 2007 WL 1498306, at *2 (N.D. Tex. May 21, 2007) (Fitzwater, J.).  It is thus apparent that Officer Wilburn's deferred adjudication is "procedurally definite" for the purposes of collateral estoppel, *see Van Dyke*, 697 S.W.2d at 385, and that her guilt was fully and fairly litigated, *see State Farm*, 118 F.3d at 381-82.

Once it is established that the deferred adjudication order constitutes a full and fair litigation of guilt, the remaining elements of the collateral estoppel test present no difficulties.  Officer Wilburn's guilt was essential to the judgment.  By statute, a Texas court may only enter an order of deferred adjudication "after receiving a plea of guilty or nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt." Tex. Code Crim. Proc. Ann. art. 42A.101.  Were it not for Officer Wilburn's guilty plea, the order could not have been issued.  The third prong is also plainly established here: the party against whom estoppel is being asserted, Officer Wilburn, was the defendant in the prior criminal

---

[11]The deferred adjudication order generally explains the reasoning of the state court: that the defendant entered her plea knowingly and voluntarily, the evidence substantiated her guilt, and it was in the best interests of the defendant and society to defer adjudication.  It does not, however, contain any analysis of the facts or law unique to Officer Wilburn's case.

proceeding. Because all three prongs of the Texas issue preclusion test are met, Officer Wilburn is estopped from denying that she recklessly discharged a firearm in a municipality with a population of 100,000 or more.

Although Officer Wilburn is estopped from denying her guilt, this still does not entitle Walker to partial summary judgment. Issue preclusion only applies to the precise issue that was litigated in the prior proceeding. *See Van Dyke*, 697 S.W.2d at 384. What was litigated in the criminal case was Officer Wilburn's guilt under § 42.12, *not* her civil liability for using excessive force. These are two different questions. Officer Wilburn has admitted that she shot Walker. The question of civil liability turns on whether in doing so she violated Walker's constitutional rights by using excessive force, and whether she is entitled to qualified immunity. Thus although Officer Wilburn is estopped from denying the recklessness of her conduct, as defined by Texas law, Walker still is not entitled to partial summary judgment.

D

Walker more specifically contends, on a theory of collateral estoppel, that a police officer who is convicted in a criminal case is "liable as a matter of law" in a parallel § 1983 action. P. Mot. Summ. J. 13 (emphasis omitted). In support of his position, he cites three federal district court cases: *Mitchell v. City of New Orleans*, 2016 WL 3127168 (E.D. La. June 3, 2016); *Page v. Starks*, 2016 WL 347585 (N.D. Miss. Jan. 28, 2016); and *Vela v. Alvarez*, 507 F. Supp. 887 (S.D. Tex. 1981). These cases do not support the broad proposition for which Walker cites them. In all three cases the defendant officers were

prosecuted under 18 U.S.C. § 242, which criminalizes the willful denial of constitutional rights under color of state law. *See Mitchell*, 2016 WL 3127168, at \*1; *Page*, 2016 WL 347585, at \*1; *Vela*, 507 F. Supp. at 889. Critical to the reasoning of all three cases is the fact that the Fourth Amendment analysis under § 242 is identical to that under § 1983. *See Mitchell*, 2016 WL 3127168, at \*4-5; *Page*, 2016 WL 347585, at \*2; *Vela*, 507 F. Supp. at 889. Indeed, the Supreme Court of the United States has described §§ 242 and 1983 as "analogues," with mostly non-substantive linguistic differences. *Page*, 2016 WL 347585, at \*2 n.2 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 n.23 (1970)). Here, by contrast, there are key substantive differences between the crime to which Officer Wilburn admitted and the constitutional deprivation of which she is accused. Moreover, because all three of Walker's cited cases involve prior *federal* prosecutions, they apply a different collateral estoppel standard than the one the court applies here. *See Mitchell*, 2016 WL 3127168, at \*4; *Page*, 2016 WL 347585, at \*2; *Vela*, 507 F. Supp. at 889. The authorities Walker cites are therefore inapposite, and he is not entitled to partial summary judgment based on collateral estoppel.

## VI

Finally, the court considers Walker's contention that Officer Wilburn's admission of guilt in her criminal case is a judicial admission that conclusively establishes her liability in this civil case. Officer Wilburn denies that her plea is binding as a judicial admission.

"A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making [it.]" *Martinez v. Bally's La., Inc.*, 244 F.3d

474, 476 (5th Cir. 2001). Such admissions are "not conclusive and binding in a separate case from the one in which the admissions are made." *Blankenship v. Buenger*, 653 Fed. Appx. 330, 335 (5th Cir. 2016) (per curiam) (emphasis omitted) (quoting *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991)); *see also Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) (quoting *Universal Am. Barge Corp.*, 946 F.2d at 1142). If Officer Wilburn's plea is a judicial admission, it is not conclusive and binding here because that plea was entered in a separate case. Moreover, Officer Wilburn's motion to stay does not constitute a judicial admission that the outcome of this case is controlled by the outcome of her criminal prosecution; as discussed above, the fact that the same conduct underlies both cases does not mean that the controlling law is identical. Walker's judicial admission argument therefore does not entitle him to partial summary judgment on liability.

\*    \*    \*

For the reasons stated, the court sustains in part and overrules in part Officer Wilburn's objections, and denies Walker's motion for partial summary judgment.

**SO ORDERED**.

November 8, 2018.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 26 -